MANUFACTURERS' NATIONAL BANK OF TROY AND OTHERS, APPELLANTS, *v.* MARY E. COX, ADMINISTRATRIX, ETC., RESPONDENT.

*Partnership — duties of partners toward each other — when may not engage in other business.*

One partner cannot enter into a secret arrangement with a third person, by means of which he might be enabled to reap an advantage or profit out of the transactions of such person with the firm.

While Cox, the defendant's intestate, and plaintiff's assignors were engaged, as partners, in the stove business in Troy, Cox purchased, for the benefit of the firm, from one Brown, the right to use in the manufacture of stoves, an improvement patented by him, upon the payment of one dollar for each stove manufactured; and the firm were also authorized to sell the right to any stove manufacturers having their head-quarters at Troy. In pursuance of this agreement, the firm paid to Brown some $11,000. At the same time, Cox, without the

* 35 Barbour, 68.    † 16 Howard, 195.

knowledge of his copartners, agreed to use his influence to introduce and bring into general use the improvement, not only at Troy but elsewhere, for which services he was to receive one-half of the moneys paid to Brown. In pursuance of this last agreement, he received one-half of the money paid by the firm to Brown. After the dissolution of the firm, the surviving partners learned of this secret agreement, and this action was brought to compel an accounting for the moneys so received. *Held*, that Cox, by entering into this agreement with Brown, engaged in a business which necessarily conflicted with the interests which he had in common with his associates; that such business thereby became part of the business of the firm; and that he was liable to account to his copartners for their proportionate share of the profits he realized.

APPEAL from a judgment in favor of the defendant, entered upon the report of a referee upon a disputed claim against the estate of David B. Cox, deceased, which was referred under the statute. For some years prior to March 4, 1871, the plaintiff's assignors and the deceased were copartners, doing business in the city of Troy, under the firm name of Cox, Church & Co. The facts are stated in the opinion.

*Irving Browne*, for the appellants.

*R. A. Parmenter*, for the respondent.

MILLER, P. J.:

The claim of the plaintiff is founded upon an alleged failure of the defendant's intestate to pay over and account for certain moneys received by him, which, it is insisted, belonged to the copartnership of which the deceased was a member. The moneys were received by the intestate from one Brown, who had made an arrangement with the firm by which they were to have the exclusive use of an invention of Brown, which obviated certain difficulties in the manufacture of stoves. The firm, by this arrangement, had the use of the invention to themselves, in Troy and its vicinity, and were authorized to sell the right to its use to stove manufacturers, having their head-quarters in Troy, by paying Brown one dollar royalty upon each stove manufactured. The arrangement was made by the intestate on behalf of the firm; and at the same interview, at a later period of the conversation, and after the contract had been agreed upon, a further agreement was made between

the intestate and Brown, by which, in consideration that the intestate should use his influence for Brown, to introduce the invention to the stove trade generally, outside of the district over which the firm had control, he was to receive fifty per cent of the net proceeds for the use of said improvement and patent, including the royalties to be paid by the said firm. The copartnership afterward paid large sums of money under the agreement first entered into, one-half of which was paid over by Brown to the intestate. The firm had no knowledge of the last arrangement at the time it was made, and until after they had ceased to pay royalties, at the end of 1870, but Mr. Church, one of its members, had some suspicion of it, and he did not know of it on the 4th of March, 1871, when the copartnership affairs were settled finally without any notice being taken of the claim now made.

There was no evidence that the intestate used his influence for Brown, or rendered him any service whatever under the agreement made with him.

The question arises upon the facts presented in this case, whether a partner can enter into a secret arrangement with a third person, by means of which he might be enabled to reap an advantage or profit, arising out of the transactions of such persons with the firm.

It is contended by the plaintiff's counsel, that the secret agreement between the intestate and Brown, was hostile to the interests of the copartnership, and that the intestate could not lawfully enter into an arrangement for his own private advantage, which would operate in any such manner. By the copartnership agreement the intestate had a right to enter into any business outside of the firm, which did not interfere with the business of the firm; and, as the evidence stands, it is not manifest that this arrangement, in any way interfered with, or affected the interests of, the copartnership. It does not appear that they lost any profit, or failed to realize all which they otherwise might have done. If it be true, as the evidence shows, that the agreement with the intestate for his own individual benefit, was made after the arrangement had been completed as to the amount to be paid for the use of the improvement invented by Brown, then the copartnership paid no more than they otherwise would have done. Nor were they in any way injured by the pro-

vision made for the introduction of the patent outside of the district over which the firm had control, as no sales were made except to the copartnership. Although it appears that no actual injury resulted to the firm, yet, I think the arrangement entered into between the intestate and Brown, if it had been carried into effect, may well have tended to deprive the partnership of profits which otherwise might have been realized. The success of the business depended upon the extent of territory over which it might be carried, and would not be confined to the immediate locality where the firm was, and the business conducted. Hence, the effect of introducing the invention, generally, outside of the Troy district, might be to restrict the sales of the copartnership stoves, and to confer advantages on other manufacturers of the same article. It might have a tendency to drive them out of the market to some extent, and thus operate injuriously to the business of the firm. If such was the fact, then it remains to be considered whether there was not a violation of the obligations due from one partner to his associates, which made the intestate liable for the profits to his copartners. The principles upon which the relationship of copartners is founded, are strict and exacting, demanding entire good faith toward each other, and the highest standard of morality, integrity and fair dealing. They occupy a position of trust and confidence, far above the ordinary standard of trade morality, in their dealings with each other. They are both trustees and agents, and have no right to deprive the partnership of the benefit of any portion of their capital, diligence, skill and industry, by engaging in any other kind of business.* These principles are familiar and well settled. But above all, they are not allowed to engage in any other business, which gives them an interest adverse to that of the firm.† Nor can one of them make a profit privately, by dealing with himself, or clandestinely carry on another trade or business, which may prove injurious to the interests of the copartnership. ‡

It cannot be doubted, I think, that the intestate, by his secret

* Story on Part., § 177 ; Col. on Part., § 184 ; Parsons on Part., § 227.

† Glassington v. Thwaites, 1 S. & S., 133.

‡ Story on P., § 178 ; Parsons, 224, 227, 228 ; Burton v. Wookey, 6 Mad., 367 ; Coll., 186  Bentley v. Craven, 18 Beavan, 75 ; Struthers v. Pearce, 51 N. Y., 361.

arrangment with Brown, by which he was to reap an advantage, was engaged in a business which necessarily conflicted with the interests which he held in common with his associates, and which, if the agreement had been fulfilled, might have seriously affected their profits; and although he did no act which produced any such results, as he had violated his obligation and duty, the business upon which he had thus entered became a part and parcel of the business of the firm, and that he was liable to account to his copartners for their proportionate share of the profits he realized. It is sufficient, I think, that he violated the principles which should have controlled his action, thus to render him liable, even although the proof fails to show any direct loss to the firm by means thereof. The settlement of the affairs of the partnership for a portion of the royalties due to Brown, does not, I think, preclude the right to maintain the plaintiff's case, even although one of the partners entertained a suspicion, in regard to the agreement between Brown and the intestate.

The objection that the action should have been in equity, is not, I think, well taken, nor does it appear to have been made upon the trial. For the reasons stated, I am of the opinion that the referee erred. The judgment should be reversed and a new trial be granted, with costs to abide the event.

Present — MILLER, P. J., BOOKES and BOARDMAN, JJ.

Judgment reversed and new trial granted, costs to abide event.